UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA EICHOLTZ,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | NO. CV 07-6413 AGR<br><br><br>MEMORANDUM OPINION AND ORDER |

Dana Eicholtz filed this action on October 4, 2007. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before Magistrate Judge Rosenberg on November 1 and December 19, 2007. On June 10, 2008, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The Court has taken the matter under submission without oral argument.

Having reviewed the entire file, the Court affirms the decision of the Commissioner.

///

///

///

///

# I.

## PROCEDURAL BACKGROUND

On April 21, 2006, Eicholtz filed applications for disability insurance benefits and supplemental security income benefits, which the Commissioner denied initially and on reconsideration. A.R. 14. The Administrative Law Judge ("ALJ") conducted a hearing on April 17, 2007, at which Eicholtz and a vocational expert testified. A.R. 260-278. On May 23, 2007, the ALJ issued a decision denying benefits. A.R. 11-19. On August 25, 2007, the Appeals Council denied Eicholtz's request for review. A.R. 5-8.

This lawsuit followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada,* 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

///
///
///

## III.

## DISCUSSION

### A. Disability

"A person qualifies as disabled, and thereby eligible for such benefits, only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and internal quotation marks omitted).

### B. The ALJ's Findings

Eicholtz has severe impairments of degeneration of the cervical and lumbar spines and of the left knee. A.R. 18. Eicholtz has the residual functional capacity to "lift and carry 20 pounds occasionally and ten pounds frequently. He can stand and walk up to six hours of an eight-hour day. He should not walk on uneven terrain. He can alternate between sitting and standing every two hours to relieve pain or discomfort. Climbing, stooping, kneeling, and crouching should only be done occasionally. There are no manipulative limitations. There are no communicative limitations. He should not work around hazards such as machinery or heights." *Id.* Based on his residual functional capacity, Eicholtz cannot perform his past relevant work. *Id.* Eicholtz can perform a significant range of sedentary work,[1] including that of order clerk. *Id.*

### C. Eicholtz's Credibility

"To determine whether a claimant's testimony regarding subjective pain or

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567.

symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (citing *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ found objective medical evidence of mild degenerative changes of the cervical spine, loss of normal lordotic curvature, mild degenerative changes of the lumbar spine, and a small bone island at the proximal shaft of the left tibia. A.R. 15, 120-122, 240-241, 244, 246-249.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (citations omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

Here, the ALJ did not find that Eicholtz was a malingerer. However, the ALJ found that Eicholtz's statements were not "sufficiently credible to justify any further limitations than those established by the objective medical record." A.R. 16. The ALJ gave three reasons: (1) Eicholtz's allegations were "inconsistent with his activities"; (2) Eicholtz's allegations were "not consistent with the treatment he receives"; and (3) the absence of objective medical evidence to support Eicholtz's allegations. A.R. 16.

First, if a claimant engages in daily activities involving skills that could be transferred to the workplace, "[t]he ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn v. Astrue*, 495 F.3d

4

625, 639 (9th Cir. 2007) (citations omitted). "Only if the level of activity were inconsistent with the Claimant's claimed limitations would these activities have any bearing on Claimant's credibility." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

The ALJ found that Eicholtz maintains his landlord's yard and cars, drives his friend to work every morning, does household chores with rest breaks. A.R. 16. There is substantial evidence for the ALJ's findings. In a Daily Activities Questionnaire completed by Eicholtz on May 8, 2006, Eicholtz stated that on an average day he fed and gave water to the homeowner's pets, he watered the front and backyard (which included walking about 50-100 yards), he did light sweeping of the house twice a week, he drove the homeowner to work or to public transportation, he carried his homeowner's groceries from the car to the house (about 50 feet) each week, he did his own grocery shopping twice a week, and he put gas into the homeowner's car and checked fluids as needed. A.R. 61-62. These activities caused aching in his shoulders, hips, and lower back. *Id.* Eicholtz argues that, at the hearing, he testified that his roommates did the housework. JS 5; A.R. 271. However, when there are conflicting statements from the claimant, the ALJ "must determine credibility and resolve the conflict." *Thomas v. Barnhart,* 278 F.3d 947, 956-57 (9th Cir. 2002) (citation omitted).

The ALJ found, based on an examining physician's uncontradicted opinion, that Eicholtz could lift and carry 20 pounds occasionally and 10 pounds frequently. A.R. 15. At the hearing, Eicholtz testified that the heaviest thing he could lift was a gallon of milk. A.R. 272. A gallon of milk weighs between eight and nine pounds. *Davis v. Astrue,* 2008 WL 2566199, *12 (N.D. W. Va. 2008); *McCoy v. Astrue*, 2008 WL 565782, *2 n.2 (S.D. Ohio 2008). Eicholtz's testimony is inconsistent with his other statements in the Questionnaire that he can lift up to 12 pounds and that he carries the homeowner's groceries from the car to the

///

5

house (about 50 feet) each week. A.R. 62. Again, it is for the ALJ to resolve the conflicts in claimant's statements.

The ALJ discounted Eicholtz's complaints of urinary problems and other side effects of medication because he did not report them to his physician. A.R. 16. Contrary to Eicholtz's argument, an ALJ may discount a claimant's credibility based on failure to tell a doctor of the limitations. *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).

Second, the ALJ found that Eicholtz "pursued only conservative treatment modalities. He has never been referred for surgery, chiropractic treatment, physical therapy, or the services of a pain management specialist." A.R. 15. Further the ALJ found that Eicholtz "treats his pain with only non-narcotic pain relievers." A.R. 16. An ALJ may discount a claimant's testimony based on conservative treatment. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (ALJ may discount claimant's testimony based on conservative treatment), *cert. denied*, 128 S. Ct. 1068 (2008).

Eicholtz correctly argues that the ALJ's finding that he treats pain with only non-narcotic pain relievers is not supported by substantial evidence in the record. Eicholtz contends that he takes Tramadol and Ultram (the generic for Tramadol). A.R. 103, 124, 175, 184, 219. The Commissioner contends that "as late as December 2006, Plaintiff reported taking absolutely no medication to his own treating provider" in Outpatient Return Visit Questionnaires. JS 14 (citing to A.R. 188, 196, 200). However, the medical records do not bear this out. *See* A.R. 113 ("refill med" on 1/4/06); A.R. 124 (Eicholtz taking medications, including Tramadol, on 6/18/06); A.R. 145 (indicating that Eicholtz inquired about medication on 10/4/06); A.R. 146 (indicating that Eicholtz picked up prescription on 9/8/06); A.R. 149 (refill meds on 7/1/06); A.R. 175 (refill Ultram on 1/8/07); A.R. 176 (refill meds on various dates in 2006); A.R. 184 (refill four medications on 5/8/06); A.R. 186 (refill Ultram on 7/31/06), A.R. 221-222 (pick up Rx 1/24/07,

6

2/5/07). Thus, the ALJ's finding about Eicholtz's medications is not supported by the medical evidence.

Third, the ALJ properly relied on the absence of medical records supporting Eicholtz's allegations, although it would not be sufficient alone to discount his credibility. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ relied on the opinion of an examining physician, Dr. Tejwani, who examined Eicholtz on June 18, 2006. A.R. 15, 123, 127. Tejwani found that Eicholtz had a normal gait, required no assistive devices, was able to sit in a chair comfortably, and could "rise from a sitting and supine position without difficulty." A.R. 125. Eicholtz had some limitations in the range of motion in his neck and thoracolumbar spine. *Id.* He had full pain-free range of motion in his shoulders, elbows, forearms, wrists, fingers, hips, knees, ankles and feet. A.R. 125-126. He had full strength bilaterally both in his upper and lower extremities. A.R. 127. The radiographs taken on that day showed mild degenerative disc disease in the lumbar spine. *Id.* Based on the exam and the objective medical records, Tejwani found the limitations that were ultimately adopted by the ALJ. A.R. 18, 128. Tejwani's findings were uncontradicted by any medical source.

Eicholtz argues that Dr. Tejwani's opinion that he is capable of sedentary work is not dispositive, citing *Penny v. Sullivan*, 2 F.3d 953 (9th Cir. 1993). In *Penny*, a nonexamining physician opined that the claimant was capable of sedentary work, and the ALJ assumed that the nonexamining physician factored pain into his conclusion. *Id.* at 956-57. The Ninth Circuit held that the ALJ erred because the nonexamining physician never personally examined the claimant and did not hear his complaints of pain. Therefore, the opinion that the claimant could perform sedentary work was of "very limited value" in view of an examining physician opinion that the claimant's ability "to pursue occupational activities are extremely limited, and it is unlikely that he could perform any type of productive job activity in his current condition." *Id.* at 957.

By contrast, Dr. Tejwani personally examined Eicholtz and both heard and observed his complaints of pain. A.R. 123, 125-128. Unlike *Penny*, Eicholtz presents no contradictory opinions from treating physicians or examining physicians. Although Eicholtz's treating records confirm the existence of impairments, the treating records do not assess limitations caused by those impairments. A.R. 141-149, 175-177, 178-179, 183, 189, 194, 197, 201, 204, 207, 210-211, 215, 218, 221-222. "[T]he mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (citation omitted).[2]

The fact that the ALJ erred in one of his credibility findings does not automatically result in remand. In *Carmickle v. Comm'r of the Soc. Sec. Admin.*, 533 F.3d 1155 (9th Cir. 2008), the Ninth Circuit concluded that two of the ALJ's reasons for making an adverse credibility finding were invalid. The court held that when an ALJ provides specific reasons for discounting the claimant's credibility, the question is whether the ALJ's decision remains legally valid, despite such error, based on the ALJ's "remaining reasoning *and ultimate credibility determination*." *Id.* at 1162 (italics in original). Therefore, when, as here, an ALJ articulates specific reasons for discounting a claimant's credibility, reliance on an illegitimate reason(s) among others does not automatically result in a remand. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) ("in light of all the other reasons given by the ALJ for Batson's lack of credibility and his residual functional capacity, and in light of the objective medical evidence

---

[2] In his second issue, Eicholtz's argument that the ALJ failed to address whether he could work on a "sustained" basis is without merit. JS 15-16. It is simply a restatement of part of his first issue – that the ALJ's decision was "not based on proper reasoning or substantial evidence" (JS 16) – which was already addressed above. In any event, the ALJ is not required to make a separate finding that a claimant can work on a sustained basis. *See Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) ("an explicit finding . . that the claimant can not only engage in substantial gainful activity but maintain that employment as well" is not required).

8

on which the ALJ relied, there was substantial evidence supporting the ALJ's decision").

Here, the ALJ's error regarding the nature of Eicholtz's pain medication does not warrant remand in light of the other valid reasons cited by the ALJ for discounting Eicholtz's credibility.[3] "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas*, 278 F.3d at 959; *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

### D.  Step Five of the Sequential Analysis

At Step Five, the Commissioner bears the burden of demonstrating there is other work in significant numbers in the national economy the claimant can do. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). If the Commissioner satisfies this burden, the claimant is not disabled and not entitled to disability benefits. If the Commissioner cannot meet this burden, the claimant is "disabled" and entitled to disability benefits. *Id.*

"There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Lounsburry*, 468 F.3d at 1114. "Where a claimant suffers only exertional limitations, the ALJ must consult the grids. Where a claimant suffers only non-exertional limitations, the grids are inappropriate, and the ALJ must rely on other evidence. Where a claimant suffers from both exertional and non-exertional limitations, the ALJ must consult the grids first." *Id.* at 1115. However, the grids are inapplicable when "a claimant's non-exertional limitations are sufficiently

---

[3] The use of narcotic pain relievers of the type taken by Eicholtz may also be characterized as conservative treatment. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (describing physical therapy and anti-inflammatory medication as conservative treatment).

9

severe so as to significantly limit the range of work permitted by the claimant's exertional limitations." *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007) (citation and internal quotation marks omitted).

Here, the ALJ found that the grids would direct a finding of "not disabled" if Eicholtz were capable of performing the full range of sedentary work. A.R. 17. The ALJ found, however, that Eicholtz's ability to perform the full range of sedentary work is impeded by additional exertional and/or non-exertional limitations. Therefore, the ALJ heard testimony from a vocational expert ("VE"). A.R. 273-278.

Eicholtz first argues that the VE "provided no support that the Claimant could perform any sedentary jobs." JS 15. Eicholtz's argument is directly contradicted by the hearing transcript. In response to the ALJ's question, "Would there be work at the sedentary level for a person such as this," the VE responded, "Yes," and provided an example of an order clerk. A.R. 276-277. According to the Dictionary of Occupational Titles ("DOT") 209.567-014 (Order Clerk, Food and Beverage), an Order Clerk is a sedentary job requiring "[e]xerting up to 10 pounds of force occasionally" and "sitting most of the time, but may involve walking or standing for brief periods of time." *Id.* These limitations correlate to the ALJ's assessment of Eicholtz's residual functional capacity.

The VE testified that there would be no work if the ALJ credited Eicholtz's testimony as to his inability to lift, stand, or walk, plus his alleged need to lie down due to the effects of medication and the resulting loss of concentration, persistence and pace. A.R. 277. However, the ALJ did not accept those limitations. The ALJ may rely on testimony a vocational expert gives in response to a hypothetical that contains "all of the limitations that the ALJ found credible and supported by substantial evidence in the record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005). The ALJ is not required to include limitations

///

that are not in his findings.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001);  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).

**IV.**

**ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: October 20, 2008

ALICIA G. ROSENBERG
United States Magistrate Judge